JOSEPH B. DUNN, Employee, Plaintiff v. MARCONI COMMUNICATIONS, INC., Employer, ACE USA, Carrier, Defendants

No. COA03-129

(Filed 16 December 2003)

**1. Workers' Compensation— coming and going rule—exceptions**

The Industrial Commission did not err by allegedly failing to apply the proper standard when it denied workers' compensation benefits based on its omitting several factual findings that, if found, would have provided sufficient evidence to allow

plaintiff worker to recover under various exceptions to the coming and going rule, because: (1) the Commission's finding of fact that plaintiff's evidence about the purpose of his trip to his home was not believable eliminated all support for the exceptions to the going and coming rule that plaintiff argued were present in this matter; and (2) all of the exceptions relied upon by plaintiff can be eliminated from consideration based upon the Commission's finding that plaintiff was on a personal errand at the time of his accident and that the trip did not serve a dual business purpose.

## 2. Workers' Compensation— credibility of witnesses— reliance on deputy commissioner's determination

The Industrial Commission did not err in a workers' compensation case by deferring to the deputy commissioner's judgment regarding the credibility of witnesses, because: (1) the Commission's finding of fact stated that the Commission reached its decision after reviewing all competent evidence of record; and (2) the full Commission did not rely solely upon the deputy commissioner's credibility determination.

Appeal by plaintiff from opinion and award entered 16 September 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 November 2003.

*The Jernigan Law Firm, by Leonard T. Jernigan, Jr., N. Victor Farah and Lauren R. Trustman, for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Dayle A. Flammia, for defendant-appellees.*

EAGLES, Chief Judge.

Plaintiff Joseph B. Dunn appeals from an opinion and award of the full Industrial Commission denying workers' compensation benefits. Plaintiff asserts two arguments on appeal: that the Industrial Commission erred (1) by failing to apply the appropriate law to determine the compensability of plaintiff's claim and (2) by deferring to the deputy commissioner's judgment regarding the credibility of witnesses. After careful review of the transcript, exhibits, record and briefs, we affirm.

The evidence presented to the Commission tended to show that plaintiff was injured in an automobile accident on 14 April 2000.

At the time of the accident, plaintiff was returning from his home in Maysville, North Carolina, to a job site located in Richmond, Virginia.

Plaintiff began working for defendant Marconi Communications, Inc. ("Marconi") in 1997. In 2000, plaintiff worked as a "lead man" for Marconi. As a lead man, plaintiff's job responsibilities consisted of supervising the installation of telephone equipment by teams of workers and maintaining the stock of materials necessary for the project. Plaintiff traveled frequently as part of his job. He testified that he had previously completed projects for Marconi in Oklahoma City, Oklahoma; Roswell, New Mexico; Dallas, Texas; Chattanooga, Tennessee; and Detroit, Michigan.

Marconi provided plaintiff a company van to drive and a company credit card in order to pay for gasoline for the van. Plaintiff was paid for any time he spent traveling between job sites. During weekends or between jobs, plaintiff would drive the company van to his home and then drive the van to the next job site.

Plaintiff used a pager that was turned on at all times. Plaintiff's supervisors contacted plaintiff using this pager in order to tell plaintiff the location of his next job site. Plaintiff testified that he called the company headquarters every week to inform the payroll clerk where to deliver his paycheck. The payroll clerk would then send plaintiff's paycheck to his location, using an express mail service if necessary.

Plaintiff was assigned to the project site in Richmond, Virginia, in late March or early April 2000. Marconi was hired to install telephone cable and equipment in the Bell Atlantic building. By 14 April 2000, the Marconi team was running behind schedule on the project. The team had begun the Richmond project later than expected and the project was further delayed by sabotage. Plaintiff testified that his immediate supervisor, Steve Wade, pressured the installation team and constantly asked plaintiff how much longer it would take to finish the project.

The Marconi crew working at the Bell Atlantic site was using a hydraulic crimper, a tool which is used to tighten cables during installation. When plaintiff worked the 8 p.m. shift on 13 April, he observed that the crew only had one hydraulic crimper in use. Plaintiff had an additional manual crimper, owned by Marconi, at his home in Maysville. Manual crimpers are used for the installation of smaller cables, while hydraulic crimpers are needed for larger cables.

Plaintiff decided to retrieve the crimper from Maysville in order to complete the project more quickly. At 8 a.m. on 14 April, a few hours after he got off work, plaintiff began the drive to Maysville. Plaintiff did not tell any of his co-workers that he was traveling home or that he was going to retrieve the additional crimper. Plaintiff's fiancée Sherry accompanied him on the trip to Maysville. Plaintiff estimated that it would take him four hours to drive from Richmond to Maysville.

Plaintiff and his fiancée arrived at plaintiff's home in Maysville around noon. Plaintiff retrieved the crimper from his house. He checked his mailbox but his paycheck had not yet arrived.

Plaintiff began to drive back to Richmond with his fiancée. He was scheduled to be at work at the Richmond project site at 8:00 p.m. that evening. Plaintiff was injured in an accident during the trip back to Richmond at approximately 5:15 p.m. The accident occurred about forty miles away from the job site. Plaintiff fell asleep while driving on Interstate 95 and ran off the highway. When the van left the highway, it flipped several times and plaintiff was thrown from the van. Plaintiff had not slept or taken a nap since before he reported to work the previous evening at 8:00 p.m., meaning that plaintiff had been awake for at least 21 hours at the time of the accident. Plaintiff sustained a concussion, a scalp laceration, several broken ribs, a collapsed lung, a bruised heart, and a compound fracture of his ankle as a result of the accident.

Defendants denied compensability of plaintiff's claim, based upon defendants' decision that plaintiff's accident did not arise out of the course and scope of his employment. Plaintiff's claim was then presented to the deputy commissioner on 26 January 2001. Defendants introduced testimony that tended to show that plaintiff did not have a legitimate business reason for driving to his home in Maysville. Marconi's human resources manager testified that, at the time of the accident, plaintiff had requested his paycheck be directly deposited in his bank account, so there was no reason for plaintiff to expect his paycheck to be delivered to his home. Plaintiff testified that he had signed up for the direct deposit program but then cancelled his participation in it. Plaintiff was unable to remember when he cancelled direct deposit of his paycheck.

In addition, plaintiff stated on cross-examination that he knew another employee at the Richmond work site had an extra crimper which was the same type of tool that he retrieved from his home in

Maysville. However, plaintiff admitted that he did not ask the other employee if he could use the "extra" crimper before he decided to drive to Maysville. Plaintiff also testified that he did not investigate the Richmond area to determine whether there was a store in Richmond where he could buy an extra crimper. Plaintiff's supervisor testified that all employees were instructed on the procedure for getting tools locally if needed for the job site. Employees were instructed to buy tools at stores near the job site or to have tools shipped in by an express service from Marconi's headquarters. In addition, the supervisor stated that company policy forbids employees from keeping tools at home, as plaintiff claimed to have done. The supervisor further testified that having an extra crimper on the Richmond job site would not have hastened the completion of the project. There were not enough workers on site to operate another hydraulic crimper, and the manual crimper only fit small cables.

The deputy commissioner and full Commission both denied plaintiff's claim for workers' compensation benefits. The Commission denied plaintiff's claim because it found that plaintiff's stated reasons for traveling to Maysville were not credible. Plaintiff appeals.

It is well-settled that "appellate courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). However, the Commission's decision regarding whether "an accident arose out of and in the course of employment is a mixed question of law and fact; thus, this Court may review the record to determine if the findings and conclusions are supported by sufficient evidence." *Bowser v. N.C. Dep't. of Corr.*, 147 N.C. App. 308, 311, 555 S.E.2d 618, 621 (2001) (quoting *Cauble v. Soft-Play, Inc.*, 124 N.C. App. 526, 528, 477 S.E.2d 678, 679 (1996), *disc. rev. denied*, 345 N.C. 751, 485 S.E.2d 49 (1997)), *disc. rev. denied*, 355 N.C. 283, 560 S.E.2d 796 (2002).

G.S. § 97-2 (6) defines "injury" under the Workers' Compensation Act to refer to "injury by accident arising out of and in the course of the employment . . . ." The "coming and going rule," which is the "general rule in this and other jurisdictions," states "that an injury by accident occurring en route from the employee's residence to his workplace or during the journey home is not one that arises out of or in the course of employment." *Powers v. Lady's Funeral Home*, 306 N.C. 728, 730-31, 295 S.E.2d 473, 475 (1982) (citing *Humphrey v. Laundry*, 251 N.C. 47, 110 S.E.2d 467 (1959)). However, the general

rule barring compensability of injuries sustained while traveling to or from work is subject to several exceptions, including *inter alia*, the "traveling salesman" exception, the "contractual duty" exception, the "special errand" exception, and the "dual purpose" exception. *See Powers*, 306 N.C. 728, 295 S.E.2d 473 (1982); *Hunt v. Tender Loving Care Home Care Agency, Inc.*, 153 N.C. App. 266, 569 S.E.2d 675, *disc. rev. denied*, 356 N.C. 436, 572 S.E.2d 784 (2002); *Creel v. Town of Dover*, 126 N.C. App. 547, 486 S.E.2d 478 (1997).

[1] Plaintiff argues that the full Commission erred by omitting several factual findings that, if found, would have provided sufficient evidence to allow plaintiff to recover under various exceptions to the "coming and going" rule. Plaintiff contends that the Commission's failure to find these facts indicates that the Commission misapprehended the law and failed to apply the proper standard when it denied workers' compensation benefits. We disagree.

As a preliminary matter, we note that this Court has held that when the Commission determines "the credibility of the witnesses and the evidence and the weight each is to receive," the Commission "may not wholly disregard or ignore the competent evidence before it." *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 601, 532 S.E.2d 207, 212 (2000) (internal citations omitted). "[T]he Commission is not required to find facts as to all credible evidence." *Peagler*, 138 N.C. App. at 602, 532 S.E.2d at 213. Therefore, merely because plaintiff presented credible evidence, the Commission was not required to make findings of fact regarding that evidence.

Here, plaintiff contends that the Commission failed to make a finding that plaintiff was on permanent "on call" status despite uncontroverted evidence that plaintiff carried a pager twenty-four hours each day. Plaintiff argues that such a finding would have allowed plaintiff to argue that his injury fell under the "traveling salesman" exception to the "coming and going" rule. The Commission also omitted any factual finding about defendant employer's furnishing of a company vehicle for plaintiff's use, which would have enabled plaintiff to argue that his injuries were compensable according to the "contractual duty" exception. In addition, plaintiff contests the lack of factual findings indicating that plaintiff had decision-making authority regarding where to get work materials for the job site, that plaintiff's purpose in traveling to Maysville was to retrieve the crimper, and that plaintiff's return trip assumed a business purpose because he was returning to work when the accident occurred. Any of these findings of fact would have allowed plaintiff to argue

that either the "special errand" or "dual purpose" exception applied. Although plaintiff presented evidence that would tend to support these proposed factual findings and therefore allow plaintiff to make these arguments regarding compensability, we hold that the absence of these proposed findings is not error here. The Commission's finding of fact that plaintiff's evidence about the purpose of his trip to Maysville was "not believable" eliminates all support for the exceptions to the "going and coming" rule that plaintiff argues were present in this matter.

The "traveling salesman" exception to the "going and coming" rule has been defined as follows: "[E]mployees whose work entails travel away from the employer's premises are held . . . to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown." *Chandler v. Teer Co.*, 53 N.C. App. 766, 768, 281 S.E.2d 718, 720 (1981) (quoting *Brewer v. Trucking Co.*, 256 N.C. 175, 179, 123 S.E.2d 608, 611 (1962)), *aff'd per curiam*, 305 N.C. 292, 287 S.E.2d 890 (1982); *see also Ross v. Young Supply Co.*, 71 N.C. App. 532, 322 S.E.2d 648 (1984). The "contractual duty" exception states that "[i]njuries received by an employee while traveling to or from his place of employment are usually not covered by the Act unless the employer furnishes the means of transportation as an incident of the contract of employment." *Strickland v. King and Sellers v. King*, 293 N.C. 731, 733, 239 S.E.2d 243, 244 (1977). However, the "contractual duty" exception can be negated if the Commission finds that the employee, while using an employer-provided vehicle, abandoned his employment-related purpose for using the vehicle. *See Alford v. Chevrolet Co.*, 246 N.C. 214, 217, 97 S.E.2d 869, 871 (1957). The "special errand" exception allows an employee to recover for injuries sustained while traveling to or from work if the injuries occur while the employee is engaged in a special duty or errand for his employer. *See Schmoyer v. Church of Jesus Christ of Latter Day Saints*, 81 N.C. App. 140, 343 S.E.2d 551, *disc. rev. denied*, 318 N.C. 417, 349 S.E.2d 600 (1986); *Felton v. Hospital Guild*, 57 N.C. App. 33, 291 S.E.2d 158, *aff'd by an equally divided court*, 307 N.C. 121, 296 S.E.2d 297 (1982). The "dual purpose" exception is defined as follows:

> [W]hen a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone; it is a business

trip if a trip of this kind would have been made in spite of the fail-
ure or absence of the private purpose, because the service to be
performed for the employer would have caused the journey to be
made by someone even if it had not coincided with the
employee's personal journey.

*Felton*, 57 N.C. App. at 37, 291 S.E.2d at 161 (quoting 1 Arthur Larson,
*The Law of Workmen's Compensation* § 18.12 (1978)).

All of the exceptions relied upon by plaintiff can be eliminated
from consideration based upon a finding that plaintiff was on a per-
sonal errand at the time of his accident and that the trip did not serve
a dual business purpose. Here, the Commission found that:

The greater weight of the competent evidence fails to support
plaintiff's testimony that the purpose of his April 14, 2000 trip to
Maysville, North Carolina with an anticipated return to
Richmond, Virginia by 8:00 p.m. to work his next shift was
to either pick up a manual crimper for the benefit of his employer
or to pick up his paycheck.

This finding was sufficient to indicate that the Commission rejected
the evidence offered to show that plaintiff had a business-related rea-
son for his trip to Maysville. The "dual purpose" rule cannot apply to
plaintiff's claim because no legitimate business purpose existed
according to the Commission's factual finding.

The Commission's holding that plaintiff's accident did not occur
within the course and scope of his employment is a mixed question
of law and fact. Therefore, we must analyze whether sufficient evi-
dence supports the Commission's findings of fact. Here, plaintiff
offered two reasons for the trip to Maysville: (1) the necessity of get-
ting a manual crimper and (2) the retrieval of his paycheck.
Defendants responded by offering evidence that tended to show that
plaintiff knew that neither of these goals required him to make an
eight-hour round trip journey. Defendants presented evidence that
plaintiff's paychecks were being electronically deposited into his
bank account, meaning that plaintiff did not need to drive home in
order to retrieve his paycheck. In addition, defendants and plaintiff
presented evidence that tended to show that Marconi would send an
employee's paycheck to him on a job site by an express delivery serv-
ice if requested by the employee. Defendants also presented evidence
that Marconi had a company policy of shipping in necessary tools or
buying tools locally and that plaintiff knew of this policy. In addition,

plaintiff knew that a co-worker at the same job site had the exact tool that plaintiff thought was needed. Plaintiff did not ask his co-worker for the tool, nor did he tell anyone where he was going when he left Richmond. Finally, defendants presented evidence that indicated the additional tool that plaintiff allegedly traveled home to get was not needed on the Richmond job site. Sufficient evidence supports the Commission's conclusion that plaintiff's stated reasons for returning home were not credible. Therefore, this assignment of error is overruled.

**[2]** Plaintiff's second argument is that the full Commission improperly deferred to the deputy commissioner's credibility determinations. Plaintiff contends that the full Commission may not rely on the deputy commissioner's findings at all, because the full Commission is the sole judge of credibility. We disagree.

The finding of fact that plaintiff disputes on appeal reads as follows, in pertinent part:

> In light of the fact that the Deputy Commissioner had the opportunity to view the witnesses and make reasonable inferences therefrom from their conduct and having considering [*sic*] all competent evidence of record, the Full Commission concludes that plaintiff traveled home for some unknown personal reason.

We note that the Commission's finding of fact states that the Commission reached its decision after reviewing all competent evidence of record. Plaintiff argues that the Commission cannot rely upon the credibility determinations of the deputy commissioner according to *Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998). The *Adams* case stated:

> Whether the full Commission conducts a hearing or reviews . a cold record, N.C.G.S. § 97-85 places the ultimate fact-finding function with the Commission—not the hearing officer. It is the Commission that ultimately determines credibility, whether from a cold record or from live testimony. Consequently, in reversing the deputy commissioner's credibility findings, the full Commission is not required to demonstrate, as *Sanders* states, "that sufficient consideration was paid to the fact that credibility may be best judged by a first-hand observer of the witness when that observation was the only one."

*Adams*, 349 N.C. at 681, 509 S.E.2d at 413 (quoting *Sanders v. Broyhill Furniture Industries*, 124 N.C. App. 637, 641, 478 S.E.2d

223, 226 (1996), *disc. rev. denied,* 346 N.C. 180, 486 S.E.2d 208 (1997), *overruled by Adams,* 349 N.C. 676, 509 S.E.2d 413 (1998)). *Adams* clearly holds that the full Commission is not required to defer to the deputy commissioner's credibility determinations simply because the deputy commissioner viewed the testimony or other evidence firsthand. However, *Adams* does not hold, as plaintiff argues here, that the full Commission may not consider the deputy Commissioner's findings.

Assuming *arguendo* that *Adams* does forbid the full Commission from giving any consideration to the deputy commissioner's credibility determinations, the Commission here did not commit reversible error. The Commission stated that it considered all the evidence and made factual findings different from the findings of the deputy commissioner, as noted in plaintiff's first argument on appeal. Because the full Commission did not rely solely upon the deputy commissioner's credibility determination, we overrule this assignment of error.

For the reasons stated above, the Industrial Commission's opinion and award is affirmed.

Affirmed.

Judges MARTIN and LEVINSON concur.